UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

The Estate of Richard E.      :
Hitchcock, by its             :
representative Richard E.     :
Hitchcock, Jr. and Jane       :
Hitchcock,                    :      File No. 2:05-CV-214
          Plaintiffs,         :
                              :
          v.                  :
                              :
Richard P. Tonino, M.D.,      :
          Defendant.          :

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Document 13)

Plaintiffs, Estate of Richard E. Hitchcock, by its
representative Richard E. Hitchcock, Jr. and Jane
Hitchcock, filed this medical malpractice action against
Richard P. Tonino, M.D.  They allege that Dr. Tonino
failed to properly investigate, diagnose, or treat the
spread of the decedent's prostate cancer.  The case is
currently before the Court on Dr. Tonino's motion for
partial judgment on the pleadings under Fed. R. Civ. P.
12(c).

## BACKGROUND

Richard Hitchcock was diagnosed with prostate cancer
in December, 1992.  (Doc. 2, ¶ 10; Doc. 6, ¶ 10).  At
that time, Dr. Tonino was Hitchcock's primary care

physician.  (Doc. 2, ¶ 11; Doc. 6, ¶ 11).  Dr. Fukuda was
Hitchcock's urologist.  (Id.)  In January, 1993, Dr.
Fukuda performed a radical prostatectomy on Hitchcock.
(Doc. 2, ¶ 12; Doc. 6, ¶ 12).  From February 1993 until
March 1998, Dr. Fukuda performed periodic prostate-
specific antigen ("PSA") tests on Hitchcock.  (Doc. 2, ¶
13; Doc. 6, ¶ 13).  The results of those PSA tests were
regularly forwarded to Dr. Tonino.  (Doc. 2, ¶ 14; Doc.
6, ¶ 14).  In 1996 Dr. Fukuda advised Hitchcock that a
PSA test revealed that his cancer had returned.  (Fukuda
Depo., Doc. 45-2, at 8).  Dr. Fukuda recommended
expectant management of the cancer while it remained
stable.  (Id. at 4).  Hitchcock last saw Dr. Fukuda on
April 4, 1998, when Dr. Fukuda noted that Hitchcock's
cancer remained stable and recommended continued
monitoring with another PSA in six months.  (Id. at 6).

According to Hitchcock, from March 1998 until August
2002, he returned to Dr. Tonino's care exclusively.
(Doc. 2, ¶ 16).  During this period Dr. Tonino did not
order any PSA tests.  In October, 2002, Hitchcock
relocated and sought the care of new doctors.  (Doc. 2, ¶
22).  A bone scan conducted by these new doctors in

December, 2002 indicated that Hitchcock's prostate cancer
had returned and spread "throughout (the patient's)
entire skeletal system, including the thoracic and lumbar
spine, pelvis, femurs, possibly tibias, shoulder region
and ribs."  (Doc. 2, ¶ 27).  Hitchcock died on February
20, 2004.  (Doc. 2, ¶ 33).

On July 28, 2005, Plaintiffs filed this action
alleging that the care Hitchcock received from Dr. Tonino
from March 1998 until August 2002 was below accepted
medical standards because Dr. Tonino failed to properly
investigate, diagnose or treat the spread of Hitchcock's
prostate cancer.

On November 10, 2005, Dr. Tonino filed a motion for
partial judgment on the pleadings arguing that
Hitchcock's claims of medical negligence based on
incidents that occurred before February 20, 2001 are
barred by the statute of limitations, Vt. Stat. Ann. tit.
12 §§ 521, 557.  In response, Plaintiffs argued that the
Court should apply the continuous treatment doctrine to
toll the statute of limitations.

The Court held a hearing on January 10, 2006.  The
Court took the motion under advisement and requested

3

supplemental briefing on whether Plaintiffs' claims are timely under the discovery rule.  By request of the parties, the Court postponed its ruling pending the outcome of settlement negotiations.

When the parties did not reach settlement, the Court ordered the parties to submit the previously requested supplemental briefing.


<u>DISCUSSION</u>

Two issues are before the Court.  First, the Court must decide whether to convert Dr. Tonino's motion for partial judgment on the pleadings into a motion for summary judgment because both parties have submitted documents beyond the pleadings.  Second, the Court must decide whether Plaintiff's claims prior to February 20, 2001 are barred by the statute of limitations.

I.   <u>Summary Judgment</u>

Dr. Tonino filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is measured by the same standard as a motion to dismiss under Rule 12(b)(6) and is limited to the content of the pleadings.  <u>Sheppard v. Beerman</u>, 18 F.3d

147, 150 (2d Cir. 1994) (same standard); <u>N. Sec. Ins. Co.</u>
<u>v. Mitec Telecom, Inc.</u>, 38 F. Supp. 2d 345, 347 (D. Vt.
1999) (same standard); <u>Sellers v. M.C. Floor Crafters,</u>
<u>Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988) (limited to
pleadings).  However, "if . . . matters outside the
pleadings are presented to and not excluded by the court,
the motion shall be treated as one for summary judgment .
. . ."  Fed. R. Civ. P. 12(c).  Conversion to summary
judgment is appropriate if the parties are notified and
have an opportunity to present evidence.  <u>Id.</u>; <u>Sellers</u>,
842 F.2d at 642; <u>Gurary v. Winehouse</u>, 190 F.3d 37, 43 (2d
Cir. 1999) (quoting <u>In re G. & A. Books, Inc.</u>, 770 F.2d
288, 295 (2d Cir. 1985)).

In this case, Dr. Tonino's supplemental brief
included excerpts from the deposition testimony of Jane
Hitchcock, Richard Hitchcock, Jr., and medical records
from Dr. Fukuda.  In response, Plaintiffs filed
"Plaintiffs' Reply to Defendant's Supplemental Memorandum
in Support of its Motion for Partial Summary Judgment."
(Doc. 44).  Attached to this filing were seven exhibits
containing additional medical records and deposition
testimony.  Therefore, this Court finds that Hitchcock

"recognized the possibility that the motion might be converted" and had a "reasonable opportunity to meet facts outside the pleadings." <u>Gurary</u>, 190 F.3d at 43.

The Court will therefore proceed to address the merits of the pending motion according to the Rule 56 standard for summary judgment.

II.   <u>Standard of Review</u>

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), or "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 97 (2d Cir. 2000) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" <u>O'Hara v. Weeks Marine, Inc.</u>, 294 F.3d 55, 61 (2d Cir. 2002) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Id.

The moving party bears the initial burden of showing
an absence of any genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once
that burden is met, the non-moving party must set forth
"specific facts showing that there is a genuine issue for
trial."  Fed. R. Civ. P. 56(c).  "When determining
whether there is a genuine issue of fact to be tried, the
court must resolve all ambiguities and draw all
reasonable inferences in favor of the party against whom
summary judgment is sought."  Winter v. United States,
196 F.3d 339, 346 (2d Cir. 1999) (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  As to
any claim or essential element for which the non-moving
party bears the burden of proof at trial, the non-moving
party must make a showing sufficient to establish the
existence of that claim or element.  Tops Mkts., Inc. v.
Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998)
(citing Celotex, 477 U.S. at 324; DiCola v. SwissRe
Holding, Inc., 996 F.2d 30, 32 (2d Cir. 1993)).
"Credibility assessments, choices between conflicting
versions of the events, and the weighing of evidence are

matters for the jury, not for the court on a motion for summary judgment." <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

III.  <u>Discovery Rule</u>

   A. Legal Background

   The Court has jurisdiction based on the diversity of the parties and, therefore, "state law governs substantive issues such as a statute of limitations defense." <u>Barquin v. Roman Catholic Diocese of Burlington, Vt., Inc.</u>, 839 F. Supp. 275, 278-79 (D. Vt. 1993).  Generally, an action for personal injuries must be "commenced within three years after the cause of action accrues . . . provided that the cause of action shall be deemed to accrue as of the date of the discovery of the injury."  Vt. Stat. Ann. tit. 12, § 512 (4). However, "[w]here a general and a specific statute of limitations are both applicable to a single cause of action . . . only the specific statute of limitations shall apply." <u>Cavanaugh v. Abbott Laboratories</u>, 145 Vt. 516, 528 (1985).  Accordingly, Vermont's statute of limitations for medical malpractice actions applies in this case.  This statute states:

> [A]ctions to recover damages for injuries to
> the person arising out of any medical or
> surgical treatment or operation shall be
> brought within three years of the date of the
> incident or two years from the date the injury
> is or reasonably should have been discovered,
> whichever occurs later, but not later than
> seven years from the date of the incident.

Vt. Stat. Ann. tit. 12, § 521 (2005)(added 1977).

Originally Dr. Tonino argued that the three year statute of limitations bars any claim based on conduct that occurred before February 20, 2001. Plaintiffs initially agreed that the statute of limitations might bar recovery for conduct prior to February 20, 2001, but urged this Court to toll the statute of limitations based on the continuous treatment doctrine.

However, these arguments conflate the question of the statute of limitations with accrual. The statute of limitations creates a time limit for commencing an action. 51 Am. Jur. 2d Limitation of Actions § 7 (2005); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (citation omitted). This time only begins to run once the cause of action accrues. 51 Am. Jur. 2d Limitation of Actions § 9; Stuart, 158 F.3d at 627. Traditionally, a cause of action in tort for personal injury accrued at the time of the negligent act. 51 Am.

9

Jur. 2d Limitation of Actions § 167; Murray v. Allen, 103
Vt. 373, 374 (1931), overruled by Cavanaugh, 145 Vt. 525.
Under this framework, Dr. Tonino's argument would
partially bar Plaintiffs' claim because the statute of
limitations clock would have begun to run when the
negligent conduct occurred.  Therefore, as the argument
goes, any negligent conduct that occurred prior to the
three years before Hitchcock died would not have been
actionable at the time of his death and therefore would
not have survived.[1]

     In 1985 the Vermont Supreme Court explicitly
overruled existing law and adopted the discovery rule for
determining when a cause of action accrues.  Cavanaugh,
145 Vt. at 525.  According to the discovery rule, a cause
of action accrues when the plaintiff discovers the
injury.  Id. at 526.  In this context, "injury" is not
only a "personal injury," but also includes a "legal

---

[1]Vt. Stat. Ann. tit. 12, § 557(a) states: "If a person, by or against whom an
action may be brought, dies before the expiration of the time within which
such action may be commenced as provided by this chapter or dies within thirty
days after the expiration of such times, the period of limitation as to such
action shall cease to operate at the date of his death. After the issuance of
letters testamentary or of administration, such action, if the cause of action
survives, may be commenced by or against the executor or administrator within
two years, and not after.

Vt. Stat. Ann. tit. 14, § 1453 states in part: "The causes of action mentioned
in sections 1451 [property] and 1452 [personal injury] of this title shall
survive.  Actions based thereon may be commenced and prosecuted by or against
the executor or administrator.

injury."  Therefore, an action is said to accrue when the plaintiff knows or should have known "both the injury and the fact that it may have been caused by the defendant's negligence or other breach of duty."  Lillicrap v. Martin, 156 Vt. 165, 175-176 (1991).  Additionally, this discovery rule applies even when the statute makes no reference to the rule.  University of Vermont v. W.R. Grace & Co., 152 Vt. 287, 290 (1989).

Therefore, Vermont's statute of limitations mandates that once the plaintiff discovers this "legal injury," he has the later of[2] three years from the date of the incident or two years from the discovery to file a cause of action based on the negligent conduct that caused the injury.  It does not matter when that conduct occurred

---

[2]Tonino relies on Mauran v. Mary Fletcher Hospital, 318 F. Supp. 297 (D. Vt. 1970), to support his argument.  However, this case is inapposite.  First, the decision predates both the amendment to the general personal injury statute of limitations adding the discovery rule, and the adoption of the specific medical malpractice statute of limitations which includes the discovery rule. Hence, that case was decided under the rule that a cause of action accrues when the negligent conduct occurred. Id. at 299.  Second, recognizing the trend toward the discovery rule, the court declined to reach the question of whether to abdicate the old accrual rule because "there is nothing to indicate in the complaint . . . that plaintiff did not in fact discover that the wrong substance had been injected into her at the time of the injection or shortly thereafter."  Id.  Hence, even under the discovery rule, the plaintiffs claims filed six years after the incident were untimely.  The issue decided in that case was "whether Vermont would recognize, and permit, a suit for breach of contract or breach of warranty in this situation, one involving the alleged injection of the wrong substance . . ."  thereby bringing the action within the six year statute of limitations.  Id.

provided it is within the seven year repose provision.[3]

B. Application

In light of the above discussion, the real question raised by the parties is when did Plaintiffs' cause of action accrue.  In the language of the discovery rule the answer depends on the date Hitchcock knew, or reasonably should have known, that he had been injured by the allegedly negligent medical care provided by Dr. Tonino.

"[T]he determination of when a plaintiff actually discovered or reasonably should have discovered his injury is a factual determination for the jury." Ware v. Gifford Mem'l Hosp., 664 F. Supp. 169, 171 (D. Vt. 1987). However, summary judgment might be appropriate if the undisputed facts could lead the factfinder to only one conclusion. Id. Dr. Tonino argues that based on the information provided by Dr. Fukuda, Hitchcock knew in 1996 that his prostate cancer had returned and that his PSA levels must be closely monitored.  For the purposes of this issue, the record before this Court indicates

---

[3] "In contrast [to a statute of limitations], a statute of repose extinguishes a cause of action, the right, after a fixed period of time . . . regardless of when the cause of action accrued.  Thus, a statute of repose may bar commencement of an action even before the cause of action accrues.  Similarly, a plaintiff may be barred from bringing an action because the statute of repose has run, even though the applicable statute of limitations has not yet expired." Stuart, 158 F.3d at 627.

that in 1996 Dr. Fukuda identified the return of
Hitchcock's cancer, Dr. Fukuda and Hitchcock agreed to
continue to closely monitor his PSA levels, Hitchcock
stopped seeing Dr. Fukuda and from 1998-2002 only
received care from Dr. Tonino, and Dr. Tonino did not
monitor Hitchcock's PSA levels.

Dr. Tonino argues that the deposition testimony of
Hitchcock's son that his father told him he was
"surprised and disappointed" is inadmissible hearsay that
does not controvert the evidence that Hitchcock knew in
1996 that his cancer had recurred.

"Hearsay evidence is any statement made by an out-
of-court declarant and introduced to prove the truth of
the matter asserted." United States v. Cardascia, 951
F.2d 474, 486 (2d Cir. 1991); Fed. R. Evid. 801(c).
Generally, hearsay is not admissible.  Fed. R. Evid. 802.
"Of course, every out-of-court statement is not hearsay,
and all hearsay is not automatically inadmissible at
trial." Cardascia, 951 F.2d at 486.

In this case, Hitchcock's statement to his son that
he was surprised and disappointed, is offered as
circumstantial evidence that he did not know about his

13

cancer at that time.  In some circumstances such a
statement is arguably not hearsay under Fed. R. Evid.
801(c).  United States v. Harris, 733 F.2d 994, 1004 (2d
Cir. 1984).  However, in this case Hitchcock's statement
is hearsay because "its evidentiary significance
depend[s] upon the truth of the matter asserted" - how
Hitchcock felt.  Id.  In other words, only if Hitchcock
was actually surprised can the statement support the
inference that he did not know about his cancer at that
time.  Nonetheless, even as hearsay under Rule 801,
Hitchcock's statement may be admissible because it falls
under the hearsay exception for "statement[s] of the
declarant's then existing state of mind, emotion,
sensation, or physical condition (such as intent, plan,
motive, design, mental feeling, pain, and bodily
health)."  Fed. R. Evid. 803(3); Id.

       Drawing all inferences in the plaintiff's favor, the
Court is not persuaded that there are no facts in dispute
regarding whether Hitchcock had discovered or should have
discovered his legal injury.  The fact that Hitchcock
knew in 1996 that his cancer had recurred, does not
establish that he knew his cancer was not being properly

treated as a result of Dr. Tonino's alleged negligence between 1998-2002.  The record also indicates that Dr. Tonino repeatedly ordered blood tests for Hitchcock during this period.  However, there is no indication that Hitchcock knew what tests were being done, which leaves open the question whether Hitchcock thought Dr. Tonino was monitoring his PSA levels.[4]

Therefore, this Court finds that there is a disputed question of fact regarding when Hitchcock knew, or reasonably should have known, his legal injury such that his cause of action can be deemed to have accrued. Therefore, summary judgment is not appropriate at this time.[5]

## CONCLUSION

For the foregoing reasons, I recommend that Dr. Tonino's converted motion for partial summary judgment (Doc. 13) be DENIED.

---

[4] Dr. Tonino apparently contends that he believed that Dr. Fukuda was monitoring Hitchcock's PSA levels and prostate cancer.  However, the record before the Court reflects that on June 23, 2000 Dr. Tonino considered doing a PSA test to determine the cause of Hitchcock's fatigue.  (Doc. 44-2, Page 7). For whatever reason, Dr. Tonino apparently never ordered a PSA test.

[5] Based on the foregoing, this Court need not address the issue of whether it is appropriate to apply the continuous treatment doctrine to toll the statute of limitations.

15

Dated at Burlington, in the District of Vermont, this 1st day of September, 2006.

/s/ Jerome J. Niedermeier

Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).